Judge Mills,
delivered the Opinion of the Court.
This is an ejectment and a verdict and judgment, rendered in favor of the lessor, of the plaintiffs, from which the defendants in the court below have appealed.
There had been a verdict and judgment rendered formerly for the defendant, and a new trial granted, and an exception to the opinion of the court, in granting the new trial, and it is now insisted by the assignment of error, that the court below erred in granting a new trial, and therefore, all subsequent proceedings ought to be reversed, and judgment rendered on the first verdict.
On the first trial, the lessors of the plaintiff gave a deposition in evidence with a copy of the patent by which they held, attached thereto. The defendants objected to the admission of the copy, on the ground, that it was not signed or issued by the Register, and the court certifies there was proof to that effect, hut of what kind does not appear; and the counsel for plaintiff, stated that he had never minutely examined the said copy of the grant before, but now found it was not the hand writing of the Register. , The court excluded the copy, and there ended the cause, and the grounds for a new trial are the surprise of the plaintiff. Although this court will control inferior tribunals in granting or refusing new trials, yet it will not do so in every ease, when a new trial has been granted, and especially where tliat grant appears necessary to reach the merits of the controversy. Now if we were to admit that the counsel for the plaintiff, acted negligently, in not having previously examined this paper, and seen whether it was or was not genuine, so much so, that his client did not deserve a new trial, yet we ' should be far from saying, that the court improperly set aside the verdict. For the counsel for the *441 plaintiff had another copy of the grant, provided, which did not appear questionable. This he had lent to one of the defendants, who left it with one of the counsel for defendants, by whom, before the trial, the plaintiff’s counsel was assured that this copy was there, and could be had. On the decision of the court, rejecting the copy offered in evidence, the counsel for the plaintiff demanded of the counsel of defendants the other copy. That counsel, of whom the demand was made, started to his office in town, as if to get the copy, and returned no more, till the court was obliged, in justice to the business before it, to wait no longer, and terminated the cause. As the plaintiffs had prepared with due and reasonable care, and part of their evidence was kept out of the way by the counsel of part of the defendants, to whom it was entrusted as a matter of courtesy, it was certainly right in the court, to prevent injury thereby, to the rights of the plaintiffs.
Tillo of the lessors of the plaintiff.
On the subsequent future trial of the cause, the plaintiffs obtained a verdict. All the titles of the parties as well as their evidence, are spread upon record, by exceptions, as well as numerous questions of law made, and instructions to the jury given and refused, the discussion of each of which, separately, would take up much time. But the whole depends on one or two questions made on the title, in the decision of which, we conceive the court below erred, and that error has given rise to numerous other questions, which could not otherwise have arisen.
The plaintiffs claim under a patent for 15,000 acres, granted to Thomas Young and John Tibbs, as tenants in common, expressed on the face thereof. John Tibbs the patentee, died a few months before the emanation of the grant, and Willoughby Tibbs was his heir, who died in the year 1803, and left the present lessors of the plaintiff, his heirs at law, them being all minors; and they brought this ejectment in the month of November, 1820. In 1823, discovering the death of their remote ancestor, before the emanation of the grant, they applied to *442 Thomas Young, the other patentee, and on the supposition that the grant liad passed to him all the title, because bis co-tenant was dead, they obtained from him a conveyance of the moiety, whiph would have descended to their immediate ancestor, if the remote ancestor had been living when the grant issued.
Declaration in ejectment amended.
Defendant’s evidence against plaintiffs title.
Young,'by liis deed to Marshall, passed all his estate in the land, and his subsequent deed to the heirs of Young passed nothing.
Declaration in ejectment cannot be amended by introducing new lessors, nor by adding new demises dated subsequent to t]le com_ mcncement of
*442 They then amended their declaration by filing a new count in the name of the same lessors, contained in their original declaration, and on this last count, with a lease laid therein since the commencement of suit, they attempted to recover and the court sustained the attempt.
To meet this the defendants introduced a conveyance from Thomas Young, the other patentee, dated in 1812, passing without reservation, all his title, divided or undivided, to Humphrey Marshall, who was a defendant, and under whom some of the other defendants claimed. This deed, the court below decided to be inoperative, as to the part which Young had last conveyed.
Thistitle, set up from Young and made after suit brought, gave rise to many questions which have ■contributed to swell the record. If wc were bound to decide between the conveyances made by Young, first to Humphrey Marshall, and then to the lessors of the plaintiff; we could have no hesitation in saying that the first conveyance disabled him from making the last, because it passed all bis title in the tract to Marshall, the grantee, divided or undivided, as expressed on the face of the grant, and left nothing in Young to be granted, to the lessors of the - plaintiffs, by the subsequent deed.
But we feel bound to dispose of all these questionsarising on this amended declaration, and demise therein laid after suit, brought in another way. This amendment to the declaration was objected to, and the objection overruled, and the opinion excepted to, and this is assigned for error. Amendments in ejectment are liberally indulged under the practice of this country, and lessors have been allowed to amend and new model their demises so as to bring *443 the real merits of the controversy before the court; but no amendment ought to. be allowed, which changes the old controversy into an entirely suit. Hence the introduction of new lessors has been refused, and so ought, the introduction of new demises, dated after suit brought, and calculated to introduce a title not- acquired or possessed before the suit. After the institution of the suit and a defence made, costs are incurred, and the defendant, by reason of defect of title in the plaintiff,. may be perfectly secure. The plaintiff cannot then be permitted to acquire new titles, and graft them, by new demises, on the old suit. He must, as in other cases, he left to a new suit for a new and subsequent cause of action, and not be permitted to .recover on a demise, laid after suit brought, The court helo.w, therefore, erred in permitting- this amended, declaration, and it must be-stricken from the cause,, and. with it will go all the questions which may arise out of the conveyance, froni Young to the lessors of the plaintiff".
G-rantofland : to twopersonsas tenants con-“f™r’ ^s“e<l death of one of them, Pas.setl-th<! to the suwlvor. In such °ase thehad remninerl in the ^tIle thereby ’it was vested in. tlie heirs of the deceased grantee.
*443 But there is another aspect of the title, which it • is necessary that we should consider, whether the title did or did not pass entire to Young, by the original grant,, as that question must still cut a figure in the cause.
Whatever might have been.the case, if Young had been a joint tenant, to whom the land at that day would have went by operation of law as survivor, (a point we need not now consider,) we conceive that the whole title did not pass to Young by the emanation of this grant. It is clear, that no title could pass to a person not in existence, and it is equally clear that the intention of the State, by this grant, was to pass one undivided moiety to Young and the other to Tibbs, in common, and to say that the State, although a grant of title was intended, passed it to a person not intended or named as taking, is construing the grant beyond its letter or spirit. It was competent for the wealth, as well as an individual, to grant the whole or an undivided part of the land. If the whole was intended, in moieties to each of two different *444 persons, as was supposed, when there was but one in fact, there can still be no reason why that one should take either less or more than was intended or expressed. Young, therefore, only took his moiety, and the other moiety did not pass from the State till 1792, when the legislature of this State, to cure such defects in title, passed the act vesting such lands in heirs or devisees, to whom they ought to have been granted in the first instance. Until that date the heirs of Tibbs hacino legal estate, and then must be dated the title of their moiety. It has also been held by this court in the case of M’Cracken’s heirs vs. Beall &c. 3 Marsh. 208, that this act of the legislature could not have a retrospective operation so far as to overreach a grant issued ad interim.
There was a grant of the whole estate to Harvie, issued subsequent to the grant to Young and the dead man Tibbs, bat prior to the act of 1792: Harvie’s grant is elder in law than the grant of the moiety to Tibbs’ heirs Ivy the act of 1792, butjunior to the grant of the other moioty to Young.
Grants, to Young and Tibbs, dated after Tibbs’ death, and to Harvie of the same land by patent subsequently, but prior to the act of 179P., make Young and Harvic tenants in common by separate grants from the state.
*444 To meet this state of lease, the defendants gave in evidence, a grant, in 1787, to John Harvie, covering the same land. Although this grant could not pass to Harvie the undivided, moiety which had previously been granted to Young, yet it could and did pass to him the undivided moiety intended, but not passed by the grant to Tibbs. This grant to Harvie was conveyed to some of the defendants as well as the title of Young, and it is, therefore clear, that the tenants or defendants in this case, shewed the elder title to the land. Tiiis appears to terminate the controversy, and to render it unnecessary to travel into and decide numerous other questions made in the cause, in which, with other matters, the statutes of limitation appear to be involved. It will be easily seen, that many decisions and instructions given by the court below, ought not to have been given, and that others refused, ought to have been given; and most of the questions made cannot again occur, on a new trial of the controversy.
It is unnecessary here to enquire how a tenancy in common could exist between Young and Harvie, consistent with the rules of law. But we shall barely remark, that we perceive no greater difficulty in making them tenants in common, than would exist in making them so, in case one of them had purchased from an individual an undivided moiety, and the other had afterwards received a conveyance of *445 the whole. The last grantee would have to relinquish his right to the whole, and come down to the standing of a tenant in common with the . first purchaser, and although by the terms of his grant he claimed the whole territory.
.JJ1~arshall and Wickliffe, for appellants; GrUte~u1en, for appellees.
The judgment must be reversed with costs, and the verdict set aside, and the cause be remanded for itew proceedings, not inconsistent with this opinion.